Mr. Maher. Thank you. Good afternoon. My name is Sean Maher and I represent Mr. Polk, defendant appellant. I'd like to focus my argument today on our insufficiency claim and also the Rule relationship. That's what the evidence at trial showed. How do we know this? Williams testified that he knew nothing about the drug supplier that Polk used for his own drugs. They never stored drugs together. They never bought drugs together. There was never a situation. Wasn't there testimony that they shared guns and controlled the territory? There was absolutely testimony from Williams about the guns. Our argument with that, your honor, is that while important to look at, that's not a dispositive factor here. And in many ways, the gun and the shootings are tangential to the core inquiry that the court has right now. Was there an actual conspiracy between Polk and Williams and the co-defendants to sell drugs together? And if you look at all the factors at this court. No, it was not whether they agreed to sell drugs together. It's whether they agreed to a conspiracy for the transfer of drugs. They didn't have to agree to sell them together. Correct, your honor. So if there's evidence that they were sharing guns and that they used those guns to control the territory to keep out other drug dealers, is that not a conspiracy to further the sale of drugs? Perhaps it would be a conspiracy to possess guns and to keep out drug dealers that they didn't want in the neighborhood. Why wouldn't it be a conspiracy as Judge in that territory? They're keeping other competitors out. I think I think the distinction is that they have completely separate drug businesses. There is no overlap in the actual core business of selling drugs. Pope did not sell drugs on behalf of Williams. He never got paid on their behalf and it didn't happen. Vice versa. There were no drugs on consignment. There's none on credit. There was no profit sharing. There was never a work schedule where Williams told Pope, we need you selling the drugs at this place in this time and give us the money. Pope never did the same with them. They were independent operators as far as their drug businesses. But wasn't there testimony that the crew to which Pope belonged sent customers to other members of the crew? There is testimony that Williams said that on occasion, Pope would send customers to Williams and the other co-defendants. I don't think there is an allegation that Pope had an independent crew. I think the allegation was that Pope was a part of a group with Williams and the three co-defendants. Our response to that is, that's a conspiracy, isn't it? Nobody doubts these guys were selling drugs. I respectfully disagree that it is one factor to look at, but there are different ways that one can look at this idea of steering. One way is if people are in an organization and if someone has a role within the organization to steer the customers so that everyone is getting the profits from the sales, that is an in-house steering. In this situation, it looks more like a referral, that you have two people who are selling drugs with their own ways of doing it and making their own money, and now and then one would run out of drugs. So in order to keep their own customers happy, they would say, hey, I don't have the crack today, go over there to that person and you can get it from them. The idea wasn't that he got any referral fee, that he got a profit from that. He was trying to keep his customer happy so that they would get what they needed, but then come back to him, because again, they were independent. If I could just turn, just for a moment, to our Rule 33 request for a hearing. The troubling aspect about this is the government knows the name of this person who has made this Brady Disclosure, but has refused to turn that name over the defense. So the government is saying, well, the doors of the court should be closed for an evidentiary hearing, because the defense hasn't shown with enough evidence that perjury happened, but yet the government hasn't disclosed the name. And the district court has refused to provide that information or to direct the government to provide that information. So Mr. Polk is in an impossible situation where he has raised what we believe is sufficient evidence of perjury by Williams, but is foreclosed from doing anything further unless there's judicial intervention. The name of the person who implicated Williams in the other murder. Correct. But why would that show perjury in this case? Because Williams was asked in his testimony repeatedly, are there any other crimes that you have committed? And he repeatedly said no. And so if he actually murdered Frank Jones in 2008 and lied repeatedly in his proper sessions to the government, and then lied in court under oath, that is a lie that cannot be rehabilitated. Isn't it correct that the representation was that the source of this information didn't have personal information? He had heard from other people a rumor to the effect that this person had killed Jones. He didn't purport to have personal information on the subject. That is correct. That is the state of the information that's given to the defense, but the defense has no way to follow that up to find out, well, where did this person learn the information from? What person might have actually had personal knowledge? The government has that. We just want that. Thank you. What do you say about the further argument that this person, Williams, is that his name? Williams had acknowledged so many serious misdeeds, including attempted murders, shootings, and all kinds of circumstances, that what you would add would be negligible. One more murder, I mean, it's not like he presented himself to be a candidate for bishop. Death is different. Williams never admitted that he killed anyone. He admitted to a number of shootings where people were injured. He admitted he tried to. But again, death is different. A human did not die in any of his admissions under oath. And if someone did, that is a tremendously different type of lie than just about any generic crime. Okay, thank you very much, Mr. Maher. You've reserved a minute for rebuttal, so we'll hear from you again, but let's turn to the government. Mr. Folley. May it please the court. My name is Nicholas Folley, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal and conducted the trial and other proceedings below. The defendant in this case was convicted following a fair trial, free of any error. Just to start with the appellant's drug conspiracy argument, there was ample evidence of Polk's agreement to join and participate in a violent narcotics conspiracy. For example, there was evidence that showed Polk shared at least five guns with his co-conspirators and that they used those guns to protect the territory where they sold drugs, including by shooting at a rival who sold drugs in their territory without their permission. There was also evidence that members of the crew would... So what about the argument that opposing counsel made that, well, that just shows they wanted to control the territory, but it doesn't show that they had a mutual agreement to deal drugs together? So the court has been clear that there's no single dispositive factor on that issue of whether there's merely a buyer-seller relationship. And some of the factors they've looked to, whether the buyer sought to advance the interest of the conspiracy, whether they performed other duties on behalf of the conspiracy. And specifically, whether their point of sale was assigned or protected by members of that conspiracy. And those are the types of factors that were supported and proved at this trial by the evidence. So is your position that even if they had their own customers, the fact that they're protecting each other's territory shows that they're still in a drug conspiracy? Yes. Because they're protecting each other's point of sale, even if they have separate customers? Yes. Well, wouldn't a person who didn't sell drugs at all, but was merely involved in protecting the territory for somebody else to sell drugs, wouldn't that person be in a drug conspiracy with the seller of the drugs whose territory the defendant is helping to protect? Yes, and that's a very good point. The evidence does not have to show that they personally were engaged themselves in the sale of narcotics, as long as they were assisting other members of the conspiracy in achieving that purpose. With respect to Polk's motion for a new trial, the district court here did not abuse its discretion in denying that underlying motion, or in denying his request for a hearing. Why won't you give the name? At the time that this information was shared, and through the President, the individual who shared the information was a cooperating witness with the U.S. Attorney's Office, and there were considerations along those lines that factored into that decision. As the district court properly held, considering the significant independent corroborating evidence that was presenting at the trial, there was no real concern here that an innocent person was convicted. So has the status of that person as a cooperating witness been revealed since? In other words, has he testified in a manner that showed the world that he's a cooperating witness? My understanding is since the time of the trial, he has testified publicly. Well, then what reason is there to withhold the fact that he gave this information now, if he has been revealed? You're no longer concealing the fact that he's a cooperating witness in the interest of his safety, because he himself has revealed it by cooperating, by cooperating publicly. So what reason is there not to turn over his name now? So I don't know the full scope of that individual's cooperation and additional considerations from the prosecutors that have been handling that particular witness, but I would say that resolving whether there is a basis at present to turn over that information is not necessary to resolve this particular appeal. And what was made clear in the district court's ruling is that even assuming that Polk had known the identity of this witness and even assuming that the evidence showed that Mr. Williams had engaged in the underlying murder, that in and of itself would not have been a basis in light of all the corroboration that was introduced at the trial for the judge to conclude that the defendant would not have been convicted. And in light of that, the disclosure of that name or anything else that would come from a hearing would not change the outcome here. If the panel has no further questions, we'll rest on our brief. You demurred from giving a full answer to my question saying that you don't know whether there is a good reason to withhold his name at present now that he has revealed himself to be a cooperator by testifying publicly in a cooperating manner. Would you send us a letter within five days advising us whether the government has any reason not to turn over that name now? Yes, we can do that. If the panel has no further questions, we'll rest on our brief. Okay, thank you very much, Mr. Foley. And we'll turn back to Mr. Maher on rebuttal. Thank you. The issue with the shootings and the guns is troubling. It was clear evidence of the shootings. However, it does not amount to an agreement, a conscious agreement of Polk to join a shared narcotics conspiracy with the co-defendants. They're separate. But what about Judge LaValle's point that, you know, even if all somebody was doing was protecting the territory of somebody who's selling the drugs, that person is involved in a conspiracy to sell drugs with the seller. And they were protecting each other's territory, right? I think it takes a greater analysis of what's actually in the mind state of that person. That person could have different reasons for actually participating in the protection of the territory. In the case here, it could very well be that Polk has his own self-interest, that the protection that he might get by sharing guns with these other individuals is that his own profits from his own discreet drug operation is helped. Well, I mean, I think it's assumed that people have reasons for doing these things. This is not a masonry work to protect somebody else's drug territory. If you're protecting somebody's drug territory, you're protecting their drug territory. You're participating in a conspiracy for them to distribute drugs. I respectfully- Even if you hope to get money from doing it or to have got some advantage helping you distribute drugs. I think if you have no interest at all in the other party's operation, which Polk had none. He had no financial interest at all. It didn't matter if Williams' drug conspiracy fell apart. It mattered nothing to Polk. And I think that's the key inquiry. It's a tough one, but I think that's really the crux here. But your argument, I suppose, in the abstract is perfectly plausible. But in the context we're here, I mean, the jury didn't buy that. This is what happens, I think, when we have a charge such as conspiracy, which is very broad and I think very difficult for an average person to understand. And there isn't sufficient guidance about what the exact mind state needs to be for someone to be convicted of this. And what type of facts- You're not raising, I don't believe, an argument about the inadequacy of the judge's charge. Well, I'm raising the idea that the jury has this wrong. And we can look at the facts now at trial and see that there are insufficient facts to support the idea that Polk knowingly joined the conspiracy. And that's something this court does on any insufficiency analysis. Okay, thank you very much, Mr. Maher. Thank you. The case is submitted. And since that's the only argument on our calendar for this afternoon, we are adjourned. Questions, Mr. Maher?